UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| HOLLI TELFORD personally and as assignee of the claims of Brenda Burton,<br><br>               Plaintiff,<br><br>vs.<br><br>RON A. BRADEEN, BRADEEN REAL ESTATE, JEFF STORM, JIM BULTSMA, JIM ASHMORE, SOUTHERN HILLS TITLE COMPANY, MORNINGSIDE PROPERTIES LLP, HEARTLAND REAL ESTATE, VERYLIS R. BOYD, WARNER C. BOYD, FALL RIVER COUNTY SHERIFF ROBERT EVANS and SA DANE RASMUSSEN, in their official capacities,<br><br>               Defendants. | CIV. 17-5042-JLV<br><br><br><br><br><br>ORDER |

## INTRODUCTION

Plaintiff Holli Telford, appearing *pro se*, filed this action against the defendants. (Docket 1). The complaint includes wide-ranging allegations, and plaintiff contends a variety of federal and state laws support her case. Id. Based on the record, defendants Robert Evans and Dane Rasmussen have not been served. Defendants Bradeen Real Estate, Jeff Storm and Ron A. Bradeen filed answers to the complaint. (Dockets 20, 21 & 22). Without answering the complaint, defendants Verylis R. Boyd, Warner C. Boyd and Morningside Properties LLP filed a motion to dismiss the complaint (Docket 18) as did defendants Jim Bultsma and Heartland Real Estate. (Docket 23). After filing

an answer, defendants Jim Ashmore and Southern Hills Title Company

("Southern Hills") submitted a motion for judgment on the pleadings. (Docket

37). In response to the motions defendants filed, plaintiff filed cross-motions

and a request for the court to take judicial notice. (Dockets 32, 33, 41 & 47).

The court evaluates each pending matter in turn before addressing other

issues.

## LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure is the basis on which

defendants Verylis R. Boyd, Warner C. Boyd, Morningside Properties LLP, Jim

Bultsma and Heartland Real Estate move to dismiss the complaint. (Dockets

18 & 23). A court may dismiss a complaint under Rule 12(b)(6) if it fails to

state a claim upon which the court can grant relief. Fed. R. Civ. P. 12(b)(6).

Defendants Jim Ashmore and Southern Hills ground their motion to dismiss in

Rule 12(c). (Docket 37). "The same standards that govern motions to dismiss

under Rule 12(b)(6) also govern motions for judgment on the pleadings under

Rule 12(c)." Ellis v. City of Minneaplis, 860 F.3d 1106, 1109 (8th Cir. 2017).

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to

accept as true legal conclusions "couched as . . . factual allegation[s]" in the

complaint. See id. "[A] complaint must allege 'more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will

not do.'" Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (quoting Twombly, 550 U.S. at 555). The court does, however, "take the plaintiff's factual allegations as true." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 678 (citation omitted). The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594. The court "will not mine a lengthy complaint searching for nuggets that might refute obvious pleading deficiencies." Neubauer v. FedEx Corp., 849 F.3d 400, 404 (8th Cir. 2017) (internal alterations and quotation marks omitted).

In applying these principles, the court must construe plaintiff's *pro se* complaint liberally. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Jackson v. Nixon, 747 F.3d 537, 544 (8th Cir. 2014) (internal quotation marks omitted). The complaint "still must allege sufficient facts to support the claims advanced." Stone, 364 F.3d at 914.

## BACKGROUND

The complaint consists of two halves. (Docket 1). First, the complaint provides several legal foundations. Id. at pp. 1-8. Those include:

- Interstate Land Sales Full Disclosure Act ("ISLA");

3

- Americans with Disabilities Act ("ADA");
- Fair Housing Act ("FHA");
- regulations of the United States Department of Housing and Urban Development ("HUD");
- "Equal Protection Clause Of The Civil Rights Statute[;]"
- Real Estate Settlement Procedures Act ("RESPA");
- Ex parte Young, 209 U.S. 123 (1908);
- covenant of quiet enjoyment;
- the South Dakota Deceptive Trade Practices Act;
- conversion;
- fraud or constructive fraud; and
- civil conspiracy.

Id. at pp. 1-7.[1]

The second half of the complaint features plaintiff's factual claims, along with some legal conclusions. Id. at p. 7-16. The following recitation is not the court's findings; it is an account of the assertions in the complaint set forth here for purposes of ruling on defendants' motions. Quoted portions of the complaint are included where helpful.

An online sale of undeveloped lots of land in South Dakota occurred on November 21, 2106. Id. at p. 8. Defendants Ron A. Bradeen, Bradeen Real Estate and Jeff Storm conducted the sale, and defendants Morningside Properties LLP, Verylis R. Boyd and Warner C. Boyd had some ownership connection to the land.[1] Id. From the state of Utah, plaintiff engaged in the land auction, bid on property and won. Id. at p. 9. Plaintiff then made a

_____

[1]Plaintiff refers to these defendants as "developers selling the land, both indirectly and directly[.]" Id. at p. 8.

request to Mr. Storm to move the closing date for the property to the earlier date of November 30, 2016.  Id.  She based the request on her status "as a disabled 'cash' buyer[ ]" and her interest in transporting personal property to South Dakota from a storage unit in Utah.  Id. at pp. 9-10.  Mr. Storm agreed, as long as plaintiff paid in full with cash, which plaintiff did.  Id. at p. 10.

Plaintiff asserts "the Developers" learned she "was a disabled and poor buyer" and then "made promises they had no intention of keeping, employed a scheme and artifice to defraud Plaintiff's [sic] of their [sic] entire purchase funds; obtained money with respect to the sales based on untrue statements or omissions; and[ ] engaged in a course of business which operated as a fraud and deceit upon Plaintiff and Burton, the purchasers."  Id.

Plaintiff had been working with Southern Hills on a title insurance policy.  Id.  Plaintiff began coordinating with Southern Hills, someone referred to as "ARMSTRONG[,]"[2] Bradeen Real Estate and Mr. Bradeen about obtaining a warranty deed for the land auctioned.  Id.  Armstrong informed plaintiff that Mr. Bradeen wanted the closing date to be December 21, 2016, but plaintiff resisted because that did not work with her plan to move personal property from Utah to South Dakota.  Id. at pp. 10-11.  Eventually, Armstrong agreed the transaction would close on December 1, 2016.  Id. at p. 11.  The closing did not occur on that day because, according to Armstrong, Mr. Bradeen did not provide the necessary documents to Southern Hills.  Id.

_____

[2]Plaintiff refers to a "Defendant ARMSTRONG" but no named defendant has the last name of "Armstrong."  Id. at p. 10.

This caused problems for plaintiff because she needed to remove her personal property from the Utah storage unit by December 1, 2016. Id. at pp. 11-12. Plaintiff provided the storage unit owner with Bradeen Real Estate's phone number. Id. at p. 12. The storage unit owner contacted Bradeen Real Estate, who allegedly "encouraged the Utah storage owner to seize Plaintiffs' [sic] personal properties[.]" Id. After the storage unit owner seized plaintiff's property, plaintiff filed suit in Utah. Id. Plaintiff alleges "Bradeen defendants contacted" the court in Utah and "procured th[e] court officer to obtain a dismissal of the Utah action[.]" Id.

Plaintiff goes on to assert Armstrong and Southern Hills prepared documents that are not consistent with federal regulations and laws. Id. at p. 13. Southern Hills eventually withdrew from the transaction. Id. at pp. 13-14. Plaintiff and Mr. Bradeen attempted to work together and finish the transaction, but the efforts were unsuccessful because they could not agree and Mr. Bradeen allegedly drafted unlawful documents. Id. at p. 14.

Plaintiff moved her trailer home in January 2017 to the land from the auction. Id. Plaintiff ended up interacting with Dane Rasmussen, who indicated plaintiff lacked proper title to the land where she positioned her trailer home. Id. at pp. 14-15. Plaintiff sought services from utility providers, but she alleges "[t]he Developers instructed the utility companies that Plaintiffs were squatting on the property." Id. at p. 15. Finally, plaintiff alleges Mr. Bradeen damaged her trailer home by placing tape across the door. Id.

**DISCUSSION**

## I. Plaintiff's causes of action

### A. Federal

Plaintiff frames her ISLA claim under the case <u>Streambend Props. II, LLC</u> <u>v. Ivy Tower Minneapolis, LLC</u>, 781 F.3d 1003, 1011 (8th Cir. 2015). (Docket 1 at pp. 1-2). In <u>Streambend</u> the ISLA causes of action asserted violations of three subsections of ISLA:

> (a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments . . . in interstate commerce, or of the mails . . .
>
>> (2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title—
>>
>>> (A) to employ any device, scheme, or artifice to defraud;
>>>
>>> (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;
>>>
>>> (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser[.]

<u>Id.</u> (quoting 15 U.S.C. § 1703(a)(2)).

Plaintiff bases her first ADA claim on the following provision: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. § 12132. The definition of "public entity" is "any State or local government[,] any department, agency, special purpose district, or other instrumentality of a State or States or local government; and [ ] the National Railroad Passenger Corporation, and any other commuter authority[.]" 42 U.S.C. § 12131(1).

The complaint refers to its next claim as "The Retaliatory Provision of the ADA and the FHA 42 U.S.C. § 1367 and 42 U.S.C. § 12203."[3] (Docket 1 at p. 3). 42 U.S.C. § 12203 is part of the ADA, and its subsection on relation provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The next subsection relates to "[i]nterference, coercion, or intimidation" and makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b). Plaintiff mentions the FHA several times and quotes cases citing the statute. (Docket 1 at pp. 3-4).

---

[3]42 U.S.C. § 1367 is not an existing statute, but 28 U.S.C. § 1367 is the statute on federal courts exercising supplemental jurisdiction.

Plaintiff cites to 24 C.F.R. § 100.7, which provides HUD's regulation on direct and vicarious liability for discriminatory housing practices. (Docket 1 at p. 4).

Plaintiff's next cause of action is not clear. It claims a violation and conspiracy to violate "[t]he Equal Protection Clause Of The Civil Rights Statute[.]" Id. at p. 5. It is unclear whether plaintiff means to rely on the Fourteenth Amendment's Equal Protection Clause, which provides, "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Plaintiff may also mean to refer to 42 U.S.C. § 1983, which makes certain actors liable for depriving people of civil rights.

Plaintiff asserts a violation of RESPA at 12 U.S.C. § 2607(b). (Docket 1 at p. 5). Under that statute, "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

Next, plaintiff contends she can bring claims based on the doctrine established in Ex parte Young, 209 U.S. 123 (1908). (Docket 1 at p. 5). "The Eleventh Amendment generally bars suits by private citizens against a state in federal court. However, state officers who 'are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce . . . an unconstitutional act . . . may be

enjoined . . . from such action." <u>Balogh v. Lombardi</u>, 816 F.3d 536, 544 (8th Cir. 2016) (quoting <u>Ex parte Young</u>, 209 U.S. at 155-56) (internal citation omitted).

**B. State**

Plaintiff bases her state law claims on the covenant of quiet enjoyment, the South Dakota Deceptive Trade Practices Act, conversion, fraud and civil conspiracy. (Docket 1 at pp. 5-7).

The South Dakota Supreme Court analyzed the covenant of quiet enjoyment in <u>Carr v. Benike, Inc.</u>, 365 N.W.2d 4, 5 (S.D. 1985). In <u>Carr</u>, a lease stated "that 'lessor covenants that the lessee, upon paying the rents and performing the covenants of this lease, shall peacefully and quietly have, hold and enjoy the rented premises for the term of this Lease.' " <u>Id.</u> (internal alteration omitted). The <u>Carr</u> court determined "[t]his statement constitutes an express covenant of quiet enjoyment[,]" and that "[t]he legal implication of the covenant, express or implied, is that the lessor will permit the tenant to enjoy fully the demised premises subject to any rights reserved to the lessor." <u>Id.</u> (internal quotation marks omitted).

"South Dakota's statutes on Deceptive Trade Practices and Consumer Protection, SDCL Chapter 37–24, provide a cause of action for damages to any person who claims to have been adversely affected by any act or practice declared to be deceptive under § 37–24–6, for the recovery of actual damages suffered as a result of the act or practice." <u>Brookings Mun. Utilities, Inc. v. Amoco Chem. Co.</u>, 103 F. Supp. 2d 1169, 1178 n.12 (D.S.D. 2000). This

requires "proof of an intentional misrepresentation or concealment of fact on which plaintiff[ ] relied and which caused injury to [her]." Id. at 1178.

Under South Dakota law, a plaintiff alleging conversion must demonstrate: "(1) [plaintiff] owned or had a possessory interest in the property; (2) [plaintiff's] interest in the property was greater than the [defendant's]; (3) [defendant] exercised dominion or control over or seriously interfered with [plaintiff's] interest in the property; and (4) such conduct deprived [plaintiff] of its interest in the property." W. Consol. Co-op. v. Pew, 795 N.W.2d 390, 397 (S.D. 2011).

The elements of fraud under South Dakota law are: "(1) a representation made as a statement of fact; (2) which was untrue and known to be untrue by the party making it, or else recklessly made; (3) which was made with intent to deceive and for the purpose of inducing the other party to act upon it; (4) which was actually relied upon by the other party; and (5) which thereby induced the other party to act to its injury or damage." Brookings, 103 F. Supp. 2d at 1178 n.10 (citing Stene v. State Farm Mut. Auto. Ins. Co., 583 N.W.2d 399, 404 (S.D. 1998)).

For a prima facie case of civil conspiracy under South Dakota law, a plaintiff must show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Kirlin v. Halverson, 758 N.W.2d 436, 455 (S.D. 2008) (emphasis omitted).

## II.  Defendants' motions

As the court noted above, three groupings of defendants filed separate motions.  All of the motions are assessed under the Rule 12(b)(6) standard.  To enhance efficiency, and because the motions overlap in substance, the court addresses them together and refers to the parties who filed the motions as "defendants" collectively.  This reference to "defendants" does not include defendants who have not filed motions.

In response to defendants' motions, plaintiff submitted filings including numerous factual assertions beyond those alleged in the complaint.  See, e.g., Dockets 32, 33, 42 & 44.  The additional facts in plaintiff's responses are not properly before the court and the court will not consider them in ruling on defendants' motions.  See Fischer v. Minneapolis Pub. Sch., 792 F.3d 985, 990 n.4 (8th Cir. 2015) ("But Fischer failed to include these claims in his complaint, failed to file an amended complaint by the deadline, and did not later petition the court to amend his complaint.  Accordingly, these claims were not properly before the district court.") (internal citations omitted); Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); Midland Farms, LLC v. U.S. Dep't of Agric., 35 F. Supp. 3d 1056, 1066 (D.S.D. 2014) ("Midland may not amend its Complaint through an argument raised in a brief in opposition to a motion to dismiss.") (collecting cases).

Considering the assertions in the complaint, the applicable law on plaintiff's causes of action and the Rule 12(b)(6) standard, the court finds it must grant defendants' motions. (Dockets 18, 23 & 37). Consequently, the court denies plaintiff's corresponding cross-motions on the same matters. (Dockets 32, 33 & 41). The court comes to this conclusion after "accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." <u>Torti</u>, 868 F.3d at 671 (internal quotation marks omitted).

The majority of the complaint is citations to legal authority, legal conclusions and references to defendants who have not filed the pending motions. (Docket 1 at pp. 7-16). The complaint scarcely mentions the other defendants. <u>Id.</u> To the extent plaintiff advances any legitimate claims, they may be more properly aimed at Mr. Bradeen, Mr. Storm and Bradeen Real Estate—all of whom filed answers and no motions in response to the complaint. (Dockets 20, 21 & 22). If the court assumes the complaint's references to an "Armstrong" are errors and the intent is to refer to Mr. Ashmore, then the complaint mentions Southern Hills and Mr. Ashmore most out of the defendants who filed motions. Even if the court made that assumption, considering the law underlying plaintiff's claims, the references to Mr. Ashmore and Southern Hills do not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>In re Pre-Filled Propane Tank Antitrust Litig.</u>, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting <u>Iqbal</u>, 556 U.S. at 678). With respect to the defendants who

filed motions, plaintiff's complaint "tenders naked assertions devoid of further factual enhancement." Id. (internal quotation marks and alterations omitted). It is not the responsibility of the court to "mine [plaintiff's] lengthy complaint . . . for nuggets that might refute obvious pleading deficiencies." Neubauer, 849 F.3d at 404 (internal alterations and quotation marks omitted). The court grants defendants' motions.

## III. Rule 4(m)

Based on the record, defendants Robert Evans and Dane Rasmussen have not been served. "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). On May 16, 2017, plaintiff filed her complaint, and 90 days after that was August 14, 2017. (Docket 1). Plaintiff shall serve defendants Evans and Rasmussen in accordance with the court's local rules and the Federal Rules of Civil Procedure and submit a filing indicating completion of service on or before **March 29, 2018**. If plaintiff fails to do so, the complaint as to defendants Evans and Rasmussen will be dismissed without prejudice and without further notice.

## IV. Judicial Notice

Plaintiff filed a request for the court to take judicial notice of certain aspects of a deed. (Docket 47). The deed relates to the land at issue in this case. (Docket 47-1). Plaintiff requests the court take judicial notice that the deed is forged and backdated. (Docket 47 at p. 1). "The court may take

judicial notice [of an adjudicative fact] at any stage of the proceeding."  Fed. R.

Evid. 201(d).  "The court may judicially notice a fact that is not subject to

reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

201(b).  A court "must take judicial notice if a party requests it and the court is

supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Aside from

attaching the deed referenced in the request and making bald assertions about

forgery, plaintiff fails to present the "necessary information" to support her

request.  See id.  The court denies plaintiff's request.

## V.  Holli Telford the litigant

As a litigant, plaintiff Holli Telford has a reputation that precedes her.

See, e.g., Nelson v. Mountain W. Farm Burea Mut. Ins. Co., 209 F. Supp. 3d

1130 (D. Neb. 2016).  She "is known for filing abusive, vexatious and frivolous

actions and pleadings throughout this nation and even in the Supreme Court

of the United States."  Id. at 1131.  She uses aliases.  See Lundahl v. Nar Inc.,

434 F. Supp. 2d 855, 860 n.2 (D. Idaho 2006) ("Plaintiff has employed

numerous aliases in her past litigation including, but not limited to, H.M.

Telford, M.H. Telford, Marti Telford, Holli Lundahl, H. Lundahl, H.T. Lundahl,

Marti Lundahl, and Holly Mattie Telford.").  The following courts imposed filing

restrictions on her based on her litigation tactics: the United States Supreme

Court; the United States Courts of Appeals of the Ninth and Tenth Circuits;

and the United States District Courts for the District of Utah, Western District

of Texas, District of Idaho and District of Nebraska.  See Nelson, 209 F. Supp. 3d at 1132-35 (collecting cases).

In this case, the court granted Ms. Telford leave to proceed *in forma pauperis* without prepayment of fees, and the court directed service.  (Docket 8).  When she filed a request for permission to submit electronic filings in the Case Management/Electronic Case Filing ("CM/ECF") system, the court denied her request.  (Docket 10).  The court based its denial on Ms. Telford's abuse of the judicial process in a prior case she filed in the Central Division of the United States District Court for the District of South Dakota, where she had electronic filing privileges.  Id. at p. 2.  In that order, the court "emphasize[d] to plaintiff that justice in this case requires her to understand and follow the local rules."  Id.

She responded with an eight-page motion for reconsideration where one page was written in all capital letters.  (Docket 12 at p. 2).  She stated she intended to seek a writ of mandamus on the matter from the United States Court of Appeals for the Eighth Circuit.  Id. at p. 1.  The submission was notarized by a notary public with a familiar name: Marti Telford.  Id. at p. 8; see Nar Inc., 434 F. Supp. 2d at 860 n.2 ("Plaintiff has employed numerous aliases in her past litigation including, but not limited to . . .  Marti Telford[.]").

The court denied her request for reconsideration.  (Docket 13).

Ms. Telford's approach to litigation in this case and the others cited above is plainly inconsistent with the requirement that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and

the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. While evident in this case, it is even more apparent in her second case filed in the Western Division of the District of South Dakota. See generally Noble v. Am. Nat'l Prop. & Casualty Ins. Co., CIV. 17-5088.

The court is aware of five cases Ms. Telford has filed in the District of South Dakota. Including this case, three in the Western Division. See id.; Lundahl v. JP Morgan Chase Bank, CIV. 17-5069. And one in both the Central and Northern Divisions. See Telford v. Dep't of Hous. & Urban Dev., No. 3:16-CV-03033, 2017 WL 1653305, at *1 (D.S.D. May 1, 2017); Lundahl v. Roberts, CIV. 17-1029. A "Logan Lundahl" is the lone plaintiff in the Northern Division case, but in his request to file documents electronically, he claims an address that is the same as Ms. Telford in this case and others. See CIV. 17-1029, Docket 4 at p. 1. Logan Lundahl's verified complaint closely resembles Ms. Telford's complaints and the end of his complaint states it was sworn to a notary public "by Holli Telford and Logan Lundahl[.]" CIV. 17-1029, Docket 1 at p. 22. The notary public again was Marti Telford. Id.

One of the Western Division cases was assigned to the Honorable Lawrence L. Piersol. CIV. 17-5069. Both plaintiffs, Logan Lundahl and Holli Lundahl, claim their residence is the same as Ms. Telford's in this case: 855 United States Highway 385, Olerichs, South Dakota, 57765. Id. Judge Piersol noted that the Honorable Roberto A. Lange, the District Judge in Ms. Telford's Central Division case, "expressed concern that Ms. [Telford] did not actually

17

reside in South Dakota at the 855 U.S. Highway 385, Oelrichs address, because a [South Dakota Department of Criminal Investigation] agent investigating for the federal defendants found this address to be a vacant lot."[4] CIV. 17-5069, Docket 10 at p. 2.  Consequently, Judge Piersol determined "doubt [was] cast upon the residency status of both plaintiffs, [and stated] the court [was] concerned by a potential fraud on to the court."  Id.  Judge Piersol ordered the plaintiffs in that case to "demonstrate proof of residency by filing two utility bills within thirty (30) days of [the] order."  Id.  The utility bills are due March 9, 2018.  Ms. Telford's cases in the District of South Dakota have either borne out her abusive litigation strategy, see CIV. 17-5088, and Telford, 2017 WL 1653305, at *1, or they have the promise of doing so.[5]

But the concerns about Ms. Telford and her residency claims do not stop there.  In Ms. Telford's recent case in the District of Nebraska, the Honorable Richard G. Kopf developed suspicion that Ms. Telford was engaging in fraud on the court.  See Nelson, 209 F. Supp. 3d at 1131-32.  Judge Kopf ordered Ms. Telford, other parties and attorneys in the case to appear in court for a hearing. 8:16CV368, Docket 17.  The hearing occurred on September 19, 2016. 8:16CV368, Docket 44.  Judge Kopf placed Ms. Telford under oath and inquired about her residency:

---

[4]The agent was Dane Rasmussen, a named defendant in this case.  CIV. 16-3033, Docket 93.

[5]On February 21, 2018, the Honorable Charles B. Kornmann, the judge presiding over Ms. Telford's Northern Division case, denied her motion to proceed in forma pauperis.  CIV. 17-1029, Docket 5.  Judge Kornmann indicated he has "serious concerns about the claimed residency" in the case. Id. at p. 6.  Judge Kornmann also ordered the production of utility bills.  Id.

- The court: Where do you reside, ma'am?

- Ms. Telford: I reside both at the Pine address and I also reside with my sister who is in Green River, Wyoming, close to a cancer hospital, so I go between both locations.

- The court: First of all, with regard to the first address, tell me what that address is.

- Ms. Telford: That address is the address or domicile of Shanandoah [sic] Trust, and a number of other trusts that belong to—various trusts that belong to my family. The Telford Lundahl trust also resides there. The address is 229 North Pine Street, Gordon, Nebraska, 69343.

- The court: That's where you reside?

- Ms. Telford: I reside there and I also reside in Green River because I have to take my sister to all of her cancer appointments.

Id. at pp. 12-13.

Ten days earlier, on September 9, 2016, Ms. Telford filed a second amended complaint in her case before Judge Lange in the District of South Dakota's Central Division. CIV. 16-3033, Docket 11. She signed the last page and underneath her signature listed her address as "320 E. Waterton St. Rapid City SD 57701[.]" Id. at p. 41. Below that address Ms. Telford included "c/o MARTI LUNDAHL 935 Wilderness Trail Green River, WY 82935[.]"[6] Id. Court mail sent to the address was returned as undeliverable because there was "no such street." CIV. 16-3033, Docket 10 at p. 1. With respect to the "Waterton" address, on October 7, 2016, less than one month after the second amended

---

[6]It is unavailing that Ms. Telford included the Wyoming address after "c/o." She still held out the Rapid City address as her residence to the court (or at the very least, an actual residence).

complaint, Judge Lange found "[t]here is no such location in Rapid City, although there is a condemned home reportedly for sale at 320 East Watertown Street in Rapid City, South Dakota." CIV. 16-3033, Docket 14 at p. 2. While Ms. Telford's second amended complaint before Judge Lange was not signed under oath, it violates Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b) governs representations to the court:

> By presenting to the court a pleading, written motion, or other paper . . . [an] unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; [and] the factual contentions have evidentiary support or, if so specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1) & (3). The court need not peel back the layers of deception and spotlight the false and inconsistent statements Ms. Telford presented to Judge Kopf and Judge Lange during a 10-day period. The actions speak for themselves.

This is not the first time courts expressed deep concern on this issue with Ms. Telford. In a District of Idaho case, the court stated: "This Court also has reason to believe that Plaintiff is not a resident of Idaho, given the numerous addresses she has used in this Court and the fact that Court mail to various plaintiffs in her actions is returned as undeliverable. The Court believes that her use of Idaho post office boxes is merely another attempt to gain access to a more favorable forum for her vexatious litigation." Nar Inc., 434 F. Supp. 2d at 857.

20

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotation marks omitted). "[A]lthough not easily defined, 'fraud on the court . . . can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense.'" Nichols v. Klein Tools, Inc., 949 F.2d 1047, 1048 (8th Cir. 1991) (quoting Pfizer, Inc. v. Int'l Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976) abrogation on other grounds recognized by Briscoe v. County of St. Louis, Missouri, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012)). Finding fraud on the court "is justified only by the most egregious misconduct directed to the court itself . . . and must be supported by clear, unequivocal and convincing evidence." Id. (internal quotation marks omitted).

Considering the full spectrum of Ms. Telford's conduct, claiming a false residence may support finding fraud on the court. Cf. SPV-LS, LLC v. Transamerica Life Ins. Co., No. CV 14-4092, 2017 WL 3668765, at *3 (D.S.D. Aug. 23, 2017) ("Submitting a false discovery document—or fabricating evidence—has been referred to as the most egregious misconduct which justifies a finding of fraud upon the Court.") (internal quotation marks omitted)); see also Shepherd v. Am. Broadcasting Cos., Inc., 62 F.3d 1469, 1472 (D.C. Cir. 1995) ("[W]e hold that a district court may use its inherent power to enter a default judgment only if it finds, first, by clear and convincing

21

evidence—a preponderance is not sufficient—that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits."). "The Court may also dismiss an action for dishonest conduct during the course of litigation under Rule 41(b) of the Federal Rules of Civil Procedure." Hill v. W. Publ'g Co., No. CIV 4-96-1032, 1998 WL 1069117, at *3 (D. Minn. Sept. 24, 1998).

At this stage, the court does not dismiss Ms. Telford's case under Rule 41(b) or because of fraud on the court. Much of the conduct highlighted occurred in other proceedings. The court also does not impose additional restrictions on her ability to submit filings in this case as it progresses. But Ms. Telford is on notice the court will not hesitate to strike filings or portions of them if they do not comply with the court's local rules or the Federal Rules of Civil Procedure. The court also keeps in mind Rule 41(b) and the fraud on the court doctrine as the case moves forward.

Although this order does not place filing restrictions on Ms. Telford, the court's order in Noble v. Am. Nat'l Prop. & Casualty Ins. Co., CIV. 17-5088, Docket 88, does limit Ms. Telford's ability to file new cases in the District of South Dakota. Much of Section V. in this order parallels Docket 88 in CIV. 17-5088.

**ORDER**

Based on the above analysis, it is

ORDERED that defendants' motions (Docket 18, 23 & 37) are granted. As to Verylis R. Boyd, Warner C. Boyd, Morningside Properties LLP, Jim Bultsma, Heartland Real Estate, Jim Ashmore and Southern Hills Title Company plaintiff's claims are dismissed.

IT IS FURTHER ORDERED that plaintiff's cross-motions (Dockets 32, 33 & 41) are denied.

IT IS FURTHER ORDERED that plaintiff's request for judicial notice (Docket 47) is denied.

IT IS FURTHER ORDERED that an order for a discovery report will be entered.

Dated February 27, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE